COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


ROBERT SCOTT WHITEHEAD

MEMORANDUM OPINION[*] BY
v.        Record No. 2098-04-4              JUDGE JAMES W. HALEY, JR.
                                            JULY 5, 2005
HOPE ALETHIA BAZACO WHITEHEAD


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Frank A. Hoss, Judge

Catherine M. Bowers (Walker, Jones, Lawrence, Duggan & Savage,
P.C., on briefs), for appellant.

Donald E. Coulter, for appellee.


Robert Scott Whitehead (husband) appeals an order from the circuit court denying in part

his motion to terminate or modify his spousal and child support obligations.  Appellant contends

that the trial court erred:  (1) in concluding that it lacked authority to terminate or modify

husband's existing mortgage obligation, (2) in finding no change in circumstances existed to

warrant a change in spousal support, (3) in determining the income attributable to Hope Alethia

Bazaco Whitehead (wife), and (4) in failing to order wife to refinance the former marital

residence solely in her name.  We disagree and affirm.

I.

"Upon appellate review, we must review the facts in the light most favorable to the party

prevailing below."  Richardson v. Richardson, 30 Va. App. 341, 349, 516 S.E.2d 726, 730

(1999).

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The parties in this matter were married on August 22, 1981 and had two children. After separating, the parties executed a property settlement agreement dated February 10, 2000. The final decree of divorce "ratified, incorporated and affirmed but did [not] merge" the property settlement agreement.

In her answer to interrogatories, wife stated that she received "$200 per week as 1099 income plus use of [a] vehicle, car insurance, health insurance, and cell phone." Wife estimated that "this is equal to $1,500 per month of 1099 income."

At trial, wife testified that she received $200 per week, which equaled $866 per month. In addition, wife testified that benefits she received, when combined with her income, totaled $1,500 in monthly 1099 income. The evidence introduced at trial also showed that husband's income increased from $16,214.48 in 1999 to $43,583.00 in 2003.

Husband filed a motion seeking to terminate or modify spousal support on October 2, 2003. After a May 26, 2004 hearing on the motion, the trial court determined it had no authority to terminate the husband's mortgage obligation or require wife to refinance the property. The court found no change in circumstances warranting a change in spousal support but did reduce the husband's child support obligation.

## II.

Code § 20-109(C) provides the following:

> In suits for divorce . . . if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, *shall be entered except in accordance with that stipulation or contract*.

(Emphasis added).

"It is well established that a property settlement agreement is a contract between the parties and that their rights and obligations are defined under it." Pellegrin v. Pellegrin, 31 Va. App. 753, 759, 525 S.E.2d 611, 614 (2000) (citations omitted). See also Boedeker v. Larson, 44 Va. App. 508, 518-19, 605 S.E.2d 764, 769 (2004). In this case, a modification of the mortgage obligation would "contravene the plain language of the agreement" and would be "plainly inconsistent with the contract." Owney v. Owney, 8 Va. App. 255, 260, 379 S.E.2d 745, 748 (1989).

The February 10, 2000 agreement was "the parties' entire understanding, there being no representation, promises, warranties, covenants, or undertakings ('side agreements') other than those expressly set forth" in the agreement. Paragraph four ("4") of the agreement was entitled "Division of Real Property." That section defined the husband's mortgage obligation. Paragraph four did not contain a clause allowing for any modification or termination of the mortgage obligation.

By contrast, the record shows that the parties added a clause to the spousal support provision of the February 10 agreement, specifically permitting modification, after the body of the agreement had been drafted, as indicated by the insertion of such a clause in different typeset. This suggests that the parties considered the issue of modification and chose to add it only to the spousal support provision. This insertion supports the trial court's decision that it was without power to alter the mortgage.

Husband asserts that the payment of the mortgage obligation was in the nature of spousal support, based on section 34B of the property settlement agreement entitled "Bankruptcy." We disagree. That section presumes a filing in bankruptcy and allows for such a finding in Federal Bankruptcy court. That section serves the purpose, in Federal Bankruptcy court, of preventing a spouse who maintains a mortgage obligation pursuant to a property settlement agreement from

- 3 -

discharging that obligation in bankruptcy. A filing by the husband in bankruptcy is a condition precedent for the application of paragraph 34B.

Husband cites this Court's decision in Langley v. Johnson, 27 Va. App. 365, 369, 499 S.E.2d 161, 164 (1994), for the proposition that a payment's function dictates whether or not it is in the nature of spousal support. The issue in Langley was whether a provision in a property settlement agreement which provided for payment of $275 per week to wife "for life" terminated upon her remarriage pursuant to Code § 20-109 and § 20-109.1. This Court concluded that the weekly payment of $275, contained under a heading "Spousal Support and Maintenance," served the function of support and was intended to be in the nature of spousal support and maintenance. Here, however, the agreement, in a paragraph specifically titled "Division of Real Property," defined husband's obligation to make a monthly mortgage payment, not a weekly payment directly to wife. Thus, we cannot say that the parties intended this provision to serve as additional spousal support.

Husband also cites White v. White, 257 Va. 139, 509 S.E.2d 323 (1999). There, the Supreme Court of Virginia held that a husband's obligation under an agreement to pay a $30,000 mortgage over 120 payments did not obligate the husband to pay an amount directly to the wife, i.e., that the payment was not in the nature of spousal support. Husband's mortgage obligation would cease after the mortgage was extinguished. We find nothing to distinguish the Supreme Court's holding in White from the present case. The parties here intended to create an obligation for the husband to pay the mortgage payment on the marital home until such debt is extinguished. In doing so, husband makes payment directly to the mortgage lien holder, not to wife as spousal support.

Additionally, the trial judge *specifically* struck language from the final order that attempted to recognize the mortgage payments as "in the nature of spousal support." The court refused to make such a finding.

Accordingly, we hold that the trial court correctly determined that it lacked authority to alter the mortgage obligation.

III.

"The determination whether a spouse is entitled to support, and if so how much, is a matter within the discretion of the court and will not be disturbed on appeal unless it is clear that some injustice has been done." Dukelow v. Dukelow, 2 Va.App. 21, 27, 341 S.E.2d 208, 211 (1986). See also Barker v. Barker, 27 Va. App. 519, 527, 500 S.E.2d 240, 244 (1998), and Stubblebine v. Stubblebine, 22 Va. App. 703, 707, 473 S.E.2d 72, 74 (1996) (*en banc*). "The trial court's decision, when based upon an *ore tenus* hearing, is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it." Venable v. Venable, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986). See also Carter v. Carter, 223 Va. 505, 508-09, 291 S.E.2d 218, 220 (1982), and Cloutier v. Queen, 35 Va. App. 413, 424, 545 S.E.2d 574, 580 (2001).

In accordance with Code § 20-109, the trial court found no material change in circumstance relating to husband's spousal support obligation. The burden to establish that change lay with the husband. See Reece v. Reece, 22 Va. App. 368, 373, 470 S.E.2d 148, 151 (1996). The court based the decision on the increased disparity between the parties' income; husband's income had tripled over a three-year period while wife's income doubled. We find no abuse of discretion in the trial court's spousal support determination.

Additionally, husband asserts that the trial court erred in determining the amount of wife's income. Wife, in an answer to interrogatory, stated that she received $200 per week as

income and in-kind benefits. She estimated "this is equal to $1,500 per month of 1099 income." At trial, wife testified that the value of the benefits plus her income totaled $1,500 per month. Wife testified that the $1,500 per month in the answer to interrogatory included both salary and benefits. The trial court believed wife's testimony. Thus, the evidence supported the trial court's finding, and we find no abuse of discretion in the court's determination of wife's income.

Husband also argues that since the trial court reduced his child support obligation it must also reduce his spousal support obligation. This Court has recognized "the well established principle that '[c]hild support and spousal support are separate and distinct obligations based on different criteria.'" Head v. Head, 24 Va. App. 166, 177-178, 480 S.E.2d 780, 786 (1997) (quoting Lambert v. Lambert, 10 Va. App. 623, 628-629, 395 S.E.2d 207, 210 (1990)). Cf. Code §§ 20-107.1(E) and 20-108.1(B). Thus, husband's argument on this point lacks merit.

IV.

Husband asserts that the trial court erred in failing to order wife to refinance the residence solely in her name. As stated above, the contract between the parties did not provide for judicial modification of the mortgage provision. Thus, the trial court was without authority to order a refinance.

For the reasons stated above, the decision of the trial court is affirmed.

Affirmed.